# Supreme Court of Texas

No. 23-0767

Shana Elliott and Lawrence Kalke,

*Petitioners,*

v.

City of College Station, Texas; Karl Mooney, in his Official Capacity as Mayor of the City of College Station; and Bryan Woods, in his Official Capacity as the City Manager of the City of College Station,

*Respondents*

On Petition for Review from the
Court of Appeals for the Sixth District of Texas

**Argued January 15, 2025**

JUSTICE DEVINE delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Lehrmann, Justice Boyd, Justice Busby, Justice Bland, Justice Huddle, and Justice Young joined.

JUSTICE SULLIVAN filed an opinion concurring in part and dissenting in part.

The people of the State of Texas, acting through their elected representatives, have long empowered Texas cities to regulate certain activities outside their corporate boundaries. Municipal authority to act

extraterritorially reflects the legislature's policy determination that limited local regulation in statutorily defined buffer zones promotes the "general health, safety, and welfare" of the citizenry.[1]  As legislatively authorized, the City of College Station extends local ordinances regulating "off-premise" signage and driveway construction to property in its extraterritorial jurisdiction (ETJ).  Those ordinances are now under fire by ETJ property owners who contend that local regulation without a corresponding right to vote in local elections is incompatible with the Texas Constitution's "republican form of government" requirement.[2]  The property owners seek a declaration that the ordinances are facially void and unenforceable.

The only issue at this nascent stage of the dispute is whether the constitutional claim is justiciable.  The City argues that it is not for several reasons, including that the form of local government is a political question for the legislature, not the courts.  The lower courts agreed and dismissed the suit with prejudice.  But while the case was pending on appeal, the legislature changed the law to provide ETJ residents a method to unilaterally opt out of a city's ETJ.[3]  The statutory procedure offers the property owners complete relief that would moot their constitutional claims, but they have yet to avail themselves of this self-help solution.  In keeping with "the judiciary's commitment to the

---

[1] TEX. LOC. GOV'T CODE §§ 42.001, .021.

[2] *See* TEX. CONST. art. I, § 2 (consecrating the people's pledge "to the preservation of a republican form of government").

[3] Act of May 8, 2023, 88th Leg., R.S., ch. 106, §§ 1, 5, 2023 Tex. Gen. Laws 213, 213-16 (codified at TEX. LOC. GOV'T CODE §§ 42.101–.156).

separation of powers, respect for the other branches, and desire to prevent constitutional friction unless and until unavoidable,"[4] we vacate the lower court judgments and remand to the trial court with instructions to abate the proceedings to allow the property owners a reasonable opportunity to complete the opt-out process.

# I

Extraterritorial jurisdiction is a legislative creation that allows a municipality to exert specified regulatory authority over unincorporated areas contiguous to municipal boundaries.[5] Texas municipalities have been empowered to regulate in areas beyond city limits for more than 100 years.[6] The current statutory scheme dates back to the 1960s.[7] As codified in Chapter 42 of the Texas Local Government Code,[8] the geographic limit of a particular municipality's ETJ is determined by its population size, among other things.[9] Within this area, the legislature

---

[4] *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 488 (Tex. 2024).

[5] *See* TEX. LOC. GOV'T CODE § 42.021 (defining municipal ETJ and setting general boundaries).

[6] *See* Act approved April 7, 1913, 33d Leg., R.S., ch. 147, § 4, 1913 Tex. Gen. Laws 307, 314 ("That each city shall have the power to define all nuisances and prohibit the same within the city and outside the city limits for a distance of five thousand feet; to have power to police all parks or grounds, speedways, or boulevards owned by said city and lying outside of said city . . . .") (current version at TEX. LOC. GOV'T CODE § 217.042).

[7] *See* Municipal Annexation Act, 58th Leg., R.S., ch. 160, 1963 Tex. Gen. Laws 447.

[8] TEX. LOC. GOV'T CODE §§ 42.001–.904 (establishing the extraterritorial jurisdiction of municipalities).

[9] *Id.* §§ 42.021–.026.

has authorized municipalities to exercise the state's police powers on specific matters, including plats and subdivision of land, signage, public roads, and groundwater extraction.[10] Other types of extraterritorial regulation is specifically forbidden. For example, a municipality may not regulate the use, height, or size of any building in its ETJ, require a building permit, or enforce its building code.[11]

With a population exceeding 100,000 residents, the City of College Station's ETJ extends five miles from the corporate boundary line and generally covers only those adjacent areas that are not part of any other municipality.[12] The plaintiffs, Shana Elliott and Lawrence Kalke, live and own real property in the City's ETJ. Although they have no vote in City elections, their property is subject to regulation under certain City ordinances. In this lawsuit, they challenge two[13]—one that prohibits "all off-premise and portable signs"[14] and another that requires

---

[10] *Id.* §§ 212.002–.003, 216.003, .901–.902; *see id.* § 42.001 (articulating the legislative purpose underlying extraterritorial jurisdiction). The parties do not assert that the City's status as a home-rule municipality alters the relevant legal analysis. A home-rule municipality has the "full power of local self government," *id.* § 51.072, so long as the charter provisions or ordinances are not inconsistent with state or federal law, TEX. CONST. art. XI, § 5.

[11] TEX. LOC. GOV'T CODE §§ 212.003(a), .049.

[12] *Id.* § 42.021(a)(5); COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 34, art. II, § 34-29 & app. A, art. 11, § 11.2 (2025) (defining the City's "extraterritorial jurisdiction" consistent with the Local Government Code).

[13] The plaintiffs' lawsuit initially targeted a broader range of City ordinances, but the suit's focus has since narrowed.

[14] COLLEGE STATION, TEX., CODE OF ORDINANCES app. A, art. 7, § 7.5(D)(11), (BB) (prohibiting "off-premises signs, including commercial and non-commercial billboards" in the City's ETJ). "'Off-premise sign' means a sign displaying advertising copy that pertains to a business, person, organization,

4

property owners to secure a City permit to improve or construct a driveway.[15] The plaintiffs have yet to take any affirmative steps towards engaging in either activity, but they nonetheless view the ordinances as unlawful encumbrances on the free use of their property. The City concedes that the ordinances are applicable to the plaintiffs' property and could be enforced in a suit for injunctive relief.[16] Although the City claims it has neither enforced nor threatened to enforce these ordinances against the plaintiffs or similarly situated residents, it has made no assurances of nonenforcement.

To eliminate any regulatory impediment, the plaintiffs seek a judicial declaration that the ordinances are invalid and unenforceable.[17] The plaintiffs assert that local regulation over nonvoting ETJ residents is facially unconstitutional under the "republican form of government" limitation in Article I, Section 2 of the Texas Constitution. Echoing

---

activity, event, place, service, or product not principally located or primarily manufactured or sold on the premises on which the sign is located." TEX. LOC. GOV'T CODE § 216.002(3).

[15] COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 34, art. II, § 34-36(b)(3) ("Any property owner desiring a new driveway approach or an improvement to an existing driveway at an existing residential or other property shall make application for a driveway permit[.]"); *see id.* § 34-31(a) ("This article shall govern all . . . driveways within the corporate limits . . . and within the [ETJ] of the City as established by the Texas Local Government Code.").

[16] *See* TEX. LOC. GOV'T CODE § 212.003(c).

[17] *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a) (authorizing a person "whose rights, status, or other legal relations" are affected by a municipal ordinance to seek a declaration regarding its construction or validity).

language from the United States Constitution's Guarantee Clause,[18] Section 2 of the Texas Bill of Rights enshrines a bedrock principle of state governance:

> All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit.  The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.[19]

Whatever "republican form of government" means in its fullness,[20] the plaintiffs contend that, at a minimum, this clause mandates that Texans shall have the power to vote for all those who regulate a locality in which they reside.

The City opposes the suit on both justiciability and merits grounds.  Antecedent to a merits-based inquiry, the City filed a plea to the jurisdiction asserting that (1) the plaintiffs lack standing because they have suffered no injury, (2) the constitutional claims are not ripe because there is no imminent threat of enforcement, and (3) the

---

[18] U.S. CONST. art. IV, § 4 ("The United States shall guarantee to every State in this Union a Republican Form of Government . . . .").

[19] TEX. CONST. art. I, § 2.

[20] *See Bonner v. Belsterling*, 138 S.W. 571, 574 (Tex. 1911) (quoting Thomas Jefferson on the meaning of the term "republic" as "of very vague application in every language" but, "purely and simply, it means a government by its citizens in mass, acting directly and not personally, according to rules established by the majority; and that every other government is more or less republican in proportion as it has in its composition more or less of this ingredient of the direct action of citizens. . . . [G]overnments are more or less republican as they have more or less of the element of popular election and control in their composition.").

structure and operation of local government is a nonjusticiable political question for the legislature. The political question doctrine is "primarily a function of the separation of powers" and "excludes from judicial review controversies that revolve around policy choices and value determinations constitutionally committed for resolution" to nonjudicial government branches.[21]

Over the plaintiffs' opposition, the trial court granted the plea and dismissed the case with prejudice.[22] While an appeal was pending, the legislature amended the ETJ statute to provide ETJ residents a voluntary process to secure the release of property from a municipality's ETJ.[23] Although this opt-out process became effective the day after the court of appeals issued its opinion, the court of appeals affirmed the dismissal order based on the political question doctrine without discussing the amended statute.[24] In supplemental briefing filed in this Court, the parties disagreed about whether the amended statute

---

[21] *Am. K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 253 (Tex. 2018) (quoting *Baker v. Carr*, 369 U.S. 186, 210 (1962), and *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986)).

[22] The trial court did not state the basis for its ruling; however, barring the plaintiffs from ever bringing their constitutional claims is inconsistent with dismissal based on lack of standing or ripeness. *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("In general, dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect.").

[23] *See* Act of May 8, 2023, 88th Leg., R.S., ch. 106, §§ 1, 5, 2023 Tex. Gen. Laws 213, 213-16 (codified at TEX. LOC. GOV'T CODE §§ 42.101–.156) (effective Sept. 1, 2023).

[24] 674 S.W.3d 653, 657, 675 (Tex. App.—Texarkana 2023). The appeal was transferred from the Tenth Court of Appeals to the Sixth Court of Appeals by a docket-equalization order of this Court. *See* TEX. GOV'T CODE § 73.001(a).

renders the case nonjusticiable by mooting the constitutional claims or rendering the claims unripe for adjudication.

Having considered the various arguments on the questions presented, including the Solicitor General's amicus brief,[25] we have determined that the litigation should not proceed as presently postured because of the extent to which the intervening change in the law alters the legal landscape. The legislature has provided a means for property owners to unilaterally secure the release of property from a municipality's ETJ. As explained below, the amendments to the ETJ statute have resulted in a legal regime that is far different from the one the plaintiffs' pleadings and arguments attack. Whether or not the mere enactment of the opt-out process has mooted their constitutional claims altogether, the law now provides a means of nonjudicial recourse that largely alleviates the plaintiffs' republican-form-of-government concerns, even under their understanding of the clause's meaning. Due respect for a coequal branch of government accordingly demands that the judiciary refrain from making any unnecessary constitutional rulings.

## II

The legislature has declared "the policy of the state to designate certain areas as the extraterritorial jurisdiction of municipalities to promote and protect the general health, safety, and welfare of persons

---

[25] Amicus briefs have also been submitted by Texas Municipal League, The Goldwater Institute, the Bexar County Emergency Services District Association, the Bexar County Emergency Services District No. 5, and Timberwood Park.

residing in and adjacent to the municipalities."[26] In addition to creating, defining, and setting the terms by which nonresidents may be subjected to municipal regulation, the legislature controls the circumstances under which a municipality's statutorily prescribed ETJ can be reduced or otherwise altered.[27]

Since 1963, the legislature has generally prohibited the reduction of a municipality's ETJ without the governing body's written consent.[28] That changed in 2023 with the enactment of SB 2038,[29] which offered two additional methods for securing the release of an area from a city's ETJ: (1) through a petition filed by a resident or landowner[30] or (2) by an election on the question of whether to release an area from the ETJ.[31]

Release by petition allows the owner of even a single parcel of land to unilaterally and automatically secure the property's release from a city's ETJ.[32] Once the city secretary has verified the property owner's

---

[26] TEX. LOC. GOV'T CODE § 42.001.

[27] *Id.* §§ 42.023–.024 (setting conditions for release, reduction, and transfer of a municipality's ETJ).

[28] *Id.* § 42.023 (stating the consent requirement and listing certain exceptions); Municipal Annexation Act, 58th Leg., R.S., ch. 160, § 3(c), 1963 Tex. Gen. Laws 447, 448-49.

[29] *See* Act of May 8, 2023, 88th Leg., R.S., ch. 106, § 1, 2023 Tex. Gen. Laws 213, 213-16 (codified at TEX. LOC. GOV'T CODE §§ 42.101–.156).

[30] *Id.* at 213-14 (codified at TEX. LOC. GOV'T CODE §§ 42.101–.105).

[31] *Id.* at 214-16 (codified at TEX. LOC. GOV'T CODE §§ 42.151–.156).

[32] TEX. LOC. GOV'T CODE §§ 42.102(b) ("The owner or owners of the majority in value of an area consisting of *one or more parcels of land* in a municipality's [ETJ] may file a petition with the municipality in accordance with this subchapter for the area to be released from the [ETJ]." (emphasis added)), .104(a) (requiring the petition to be signed by "more than 50 percent

signature on an otherwise valid petition, the city is required to "immediately release the area from [its ETJ]."[33] Because releasing the area is the only action a city is authorized to take on a valid petition, its consent is not required.[34] The statute is clear on this:

> If a municipality *fails to take action to release the area . . .* by the later of the 45th day after the date the municipality receives the petition or the next meeting of the municipality's governing body that occurs after the 30th day after the date the municipality receives the petition, *the area is released by operation of law.*[35]

Because the statute prescribes a mandatory action and a mandatory consequence for noncompliance, no discretion is afforded to the municipality on these matters.[36] When property is released from a municipality's ETJ—by the city or by operation of law—regulation of the area is necessarily returned to the county. The amended statute confers

---

of the registered voters of the *area described by the petition* as of the date of the preceding uniform election date" or "a majority in value of the holders of title of land *in the area described by the petition*" (emphases added)); *see id.* § 42.103 (making Chapter 277 of the Election Code applicable to a petition requesting removal); *see also* TEX. ELEC. CODE §§ 277.001–.004 (governing the requisites for a petition prescribed by law outside of the Election Code).

[33] TEX. LOC. GOV'T CODE § 42.105(a)–(c).

[34] *Cf. City of Murphy v. City of Parker*, 932 S.W.2d 479, 481 n.1 (Tex. 1996) (observing that the legislature created the ETJ scheme and has the power to alter it, including "the power to entirely eliminate the requirement that a city give its written consent to a reduction of its ETJ").

[35] TEX. LOC. GOV'T CODE § 42.105(d) (emphases added).

[36] *See Image API, LLC v. Young*, 691 S.W.3d 831, 841 (Tex. 2024) ("A statute requiring that an act be performed within a certain time, using words like shall or must, is mandatory."); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("The word 'must' is given a mandatory meaning when followed by a noncompliance penalty." (internal quotation marks omitted)).

no regulatory authority and imposes no public duties on private persons residing in the released area.[37] Nor does it allow landowners to create a regulatory scheme of their choosing or permit them to pick and choose among the municipal ordinances to which they will adhere. Instead, it offers landowners a choice among existing regulatory schemes.

Not all areas in an ETJ are eligible for release under the amended statute.[38] For example, the release process is not available for an area within five miles of a military base at which an active training program is conducted or for property that is subject to a strategic partnership agreement as defined in Chapter 43 of the Local Government Code.[39] The plaintiffs do not claim that their property falls within an exclusion, and the City concedes—as it must—that the statute's plain language grants the plaintiffs the unilateral ability to secure the release of their property from the City's ETJ. Once released, the area "may not be included in the [ETJ] or the corporate boundaries of a municipality, unless the owner or owners of the area subsequently request that the area be included in the municipality's [ETJ] or corporate boundaries."[40] Accordingly, the petition-for-removal process would certainly and permanently moot the only claim the plaintiffs have brought in this

---

[37] *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 880 (Tex. 2000) ("A delegation [of legislative authority] occurs only when an entity is given a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which the existing laws will apply.").

[38] TEX. LOC. GOV'T CODE §§ 42.101, .151 (exempting certain areas from ETJ removal by petition or election).

[39] *Id.* §§ 42.101(1), (5), .151(1), (5).

[40] *Id.* § 42.105(e).

11

lawsuit.    The plaintiffs nonetheless continue to press their constitutional claims without attempting the nonjudicial resolution the statute provides.  The stated reason: futility.[41]

The plaintiffs point to at least ten resolutions the City has formally adopted purporting to deny release petitions duly filed by ETJ property owners.  In each, the City states its opinion that SB 2038 (1) unconstitutionally delegates the City's legislative authority and (2) conflicts with the consent requirement in section 42.023 of the Local Government Code.[42]  The City has also banded together with more than a score of other municipalities in challenging SB 2038's validity under assorted constitutional and statutory-construction theories in parallel litigation.[43]  The City's opposition to the new law is manifest, but that presents no barrier to the plaintiffs' pursuit of the statutory release process.

Nor does the City's resistance to SB 2038 authorize this Court to pass judgment on the constitutionality of an ETJ regime that lacks a unilateral opt-out option—a regime that no longer exists and to which

---

[41] In a similar vein, the plaintiffs contend that requiring a property owner to seek "permission" to leave the jurisdiction of an unlawful authority is a distinct injury that the removal process will not cure. This argument misunderstands the statutory scheme, which does not give the City discretion to deny a release petition.  Release is a matter of paperwork, not permission.

[42] *See, e.g.*, City of College Station, Tex., Resolution Nos. 03-28-24-9.4a (Mar. 28, 2024); 03-28-24-9.4b (Mar. 28, 2024); 03-28-24-9.4c (Mar. 28, 2024); 03-28-24-9.5a (Mar. 28, 2024); 03-28-24-9.5b (Mar. 28, 2024); 03-28-24-9.5c (Mar. 28, 2024); 10-24-24-7.3 (Oct. 24, 2024); 10-24-24-7.4 (Oct. 24, 2024); 10-24-24-7.5 (Oct. 24, 2024); 12-12-24-7.17 (Dec. 12, 2024), *available at* https://www.cstx.gov/departments___city_hall/codes__ordinances_and_policies.

[43] *See City of Grand Prairie v. State*, No. D-1-GN-23-007785 (261st Dist. Ct., Travis County, Tex. Oct. 25, 2023).

the plaintiffs are no longer subject. The Local Government Code imposes a mandatory duty on City officials to *immediately release* an area described in a release petition, and if that does not happen within a specified timeframe, release is effectuated *as a matter of law*. Any purported denial of a compliant petition is legally ineffective to avoid the statutory fail-safe. To the contrary, such an action triggers release *automatically* because, in the words of the statute, the municipality has "fail[ed] to take action to release the area."[44] No City ordinance or policy statement can override an express legislative command or supersede what has occurred by operation of law.[45] On the language of the statute, mootness is all but a certainty. But even when mootness emanating from a nonjudicial process is merely a possibility, we have consistently required abatement of the judicial proceedings while the litigants pursue relief extrajudicially.[46] That is what should happen here.

---

[44] TEX. LOC. GOV'T CODE § 42.105(d).

[45] *See* TEX. CONST. art. XI, § 5(a) ("[N]o [home-rule city] charter or any ordinance passed under said charter shall contain any provision inconsistent with . . . the general laws enacted by the Legislature of this State."); *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 592 (Tex. 2018) (observing that the legislature can expressly or impliedly limit or withdraw the local self-government power of a home-rule municipality, so long as the legislature's intent to impose the limitation appears with unmistakable clarity).

[46] *Cf.*, *e.g.*, *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 620 (Tex. 2023) ("[A] decision from the PUC on the underlying issues could moot CPS's constitutional claims . . . [by] cur[ing] the alleged violations and obviat[ing] the need to assert the constitutional claims in court. And even if it does not, a party is not precluded from pursuing its constitutional claims after exhaustion . . . ."); *Garcia v. City of Willis*, 593 S.W.3d 201, 211-12 (Tex. 2019) (holding that even if the complainant "could not litigate his constitutional claims in an administrative proceeding, the fact remains that the hearing officer might have ruled in his favor for other reasons that would moot his

13

Texans have long permitted the legislature to determine, subject to constitutional limits, when an individual's private-property rights must yield to the public interest in health, safety, and welfare.[47] But in our republican form of government, the legislature retains the power to bring local government to heel and in all things remains accountable to the people for its judgment.[48] In SB 2038, the legislature has reweighed the interests at stake,[49] and the role of the judiciary "is not to second-guess the policy choices that inform our statutes."[50] Under the doctrine of constitutional avoidance, our duty to ensure compliance with the Texas Constitution comes with a corresponding "duty to avoid

---

constitutional arguments," so "he was at least required to seek administrative relief before filing a takings claim in district court"); *City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012) ("[A] litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim.").

[47] *See Commons of Lake Hous., Ltd. v. City of Houston*, ___ S.W.3d ___, 2025 WL 876710, at *6 (Tex. Mar. 21, 2025) ("The government must exercise its police power to satisfy its responsibilities, and this commonly requires the imposition of restrictions on the use of private property. . . . [S]ome of these intrusions are compensable; most are not." (citations and internal quotation marks omitted)); *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 670 (Tex. 2004) (while "all property is held subject to the valid exercise of the police power," some regulations may give rise to a compensable taking (citation and internal quotation marks omitted)).

[48] *See supra* note 45.

[49] *See* House Comm. on Land & Res. Mgmt., Bill Analysis, Tex. S.B. 2038, 88th Leg., R.S. (2023) (recognizing that ETJ statutes afford municipalities "too much control over areas outside of municipal corporate boundaries" and that allowing such regulation over residents and property owners who have "no vote or voice in the municipalities that regulate them" "may not necessarily be in their best interests").

[50] *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003).

14

unnecessary constitutional issues."[51] This doctrine "manifest[s] the judiciary's commitment to the separation of powers, respect for the other branches, and desire to prevent constitutional friction unless and until unavoidable."[52] By refraining from exercising jurisdiction when a dispute can be resolved extrajudicially under a legislative enactment, we uphold the separation of powers that stabilizes our government.[53]

There are two methods an ETJ property owner can pursue to get out from under the City's regulation: under the ETJ statute or under the Texas Constitution. Each one could resolve, and thereby moot, the other. The doctrine of constitutional avoidance directs an order of operations, not as a jurisdictional matter but as a discretionary policy matter akin to comity. Because there is no pressing need for this Court to opine on sweeping questions of constitutional law that will necessarily evaporate, it would be imprudent to do so at this time.[54] Although the

---

[51] *See In re Turner*, 627 S.W.3d 654, 656 (Tex. 2021) (orig. proceeding) ("While we recognize our role as the ultimate interpreter of the Constitution[,] . . . courts have a duty to avoid unnecessary constitutional issues." (alterations in original) (quoting *Sullivan v. McDonald*, 913 A.2d 403, 406 (Conn. 2007))).

[52] *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 488 (Tex. 2024).

[53] *See Borgelt v. Austin Firefighters Ass'n*, 692 S.W.3d 288, 303 (Tex. 2024) (recognizing the constitutional avoidance doctrine's prudential foundation that is rooted in "the presumption that the rest of the government, no less than the judiciary, intends to comply with the Constitution"); *see also United States v. Winstar Corp.*, 518 U.S. 839, 875 (1996) (the "function of constitutional avoidance" includes "avoiding difficult constitutional questions about the extent of state authority to limit the subsequent exercise of legislative power").

[54] That is not to say that a court must *always* abate and direct the plaintiff to initiate a unilateral opt-out procedure before addressing the constitutional challenge. It might be inappropriate for a court to require the

15

City is challenging SB 2038's constitutionality in other litigation, the statute is presumed constitutional and remains the law.[55] What matters here and now is that the statute's plain language affords these plaintiffs prompt and complete relief for their alleged injuries.

The importance of judicial restraint also compels us to vacate the court of appeals' opinion. With a complete legislative solution already enacted and imminently effective,[56] the court of appeals could have paused the litigation rather than unnecessarily opining on the justiciability question. Had the court been apprised of this significant legislative development—and there is no indication that it was—we suspect it would have followed our constitutional avoidance precedent and abated the suit or otherwise taken the altered legal landscape into account. Opinions in cases involving matters that have become moot may be vacated when we have concluded, as a matter of our equitable discretion, "that the public interest would be served by vacatur."[57] Though the procedural posture is different here, we exercise our

plaintiff to undergo an opt-out procedure that would itself cause an independent injury. But that is not the case here.

[55] *See Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003) (noting that statutes are presumed to be constitutional and "the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements").

[56] The Governor signed S.B. 2038 into law on May 19, 2023, nearly a month before the court of appeals heard oral argument and more than three months before the court issued its opinion on the eve of the law's effective date. *See* 674 S.W.3d 653, 653 (Tex. App.—Texarkana 2023).

[57] *Morath v. Lewis*, 601 S.W.3d 785, 790-92 (Tex. 2020) (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994)).

16

discretion to provide the same equitable relief based on the state of the legal landscape when the court of appeals ruled.

"Vacatur removes the opinion's binding precedential nature but does not strike it from case reporters or foreclose litigants and courts in future cases from relying on it as persuasive authority."[58] Without commenting on the correctness *vel non* of the court of appeals' analysis, some observations about the opinion are therefore warranted. First, the opinion does not purport to hold that "republican form of government" claims under the Texas Constitution are *categorically* nonjusticiable. Rather, based on the appellate court's understanding of our opinions in *Brown v. City of Galveston*[59] and *Bonner v. Belsterling*,[60] the court found itself constrained to the conclusion that questions concerning the legislature's choices about the form of municipal government are beyond judicial purview.[61] Second, even as to that conclusion, the court hedged, observing that those cases may also be fairly construed as having found the issue to be within the judiciary's reach but then determining that the authority the legislature had exercised over the form of city government in those cases was consistent with a constitutional "republican form of government."[62] The court's uncertainty about the

---

[58] *Id.* at 791.

[59] 75 S.W. 488 (Tex. 1903).

[60] 138 S.W. 571 (Tex. 1911).

[61] 674 S.W.3d at 657.

[62] *Id.*; *see Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 698 (Tex. 2022) (noting that the Declaratory Judgments Act does not waive immunity from suit for facially invalid constitutional claims).

correct framing of the issue cautions against reading the vacated opinion too expansively.

### III

For the reasons stated, we vacate the lower court judgments and the court of appeals' opinion. The case is remanded to the trial court with instructions to abate the proceedings pending the plaintiffs' exercise of their statutory remedy. If after a reasonable time the plaintiffs have not submitted a compliant petition for release and have therefore elected to forgo the unilateral release process, the suit may be subject to dismissal because any injury would be traceable only to their choice to voluntarily submit to the City's ETJ regulation.[63]

John P. Devine
Justice

**OPINION DELIVERED:** May 9, 2025

---

[63] *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018) (holding that a claim is justiciable only if the plaintiff (1) suffers an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) redressable by a ruling from the judiciary).

18